**Gloria PADILLA, Plaintiff,**

v.

**Luis M. d'AVIS and City of Chicago, Defendants.**

**Anita JONES, Plaintiff,**

v.

**Luis M. d'AVIS and City of Chicago, Defendants.**

Nos. 83 C 6390, 82 C 2943.

United States District Court, N.D. Illinois, E.D.

Feb. 1, 1984.

## TABLE 1

### RACE OF THE VICTIM

| | DB61 | DB70 | DB73 | DB74 | DB77 | DB80 | DB78 | DB83 | DB83 | DB83 | DB79A | DB83 | DB80 | DB85 | DB102 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Unadjusted | 1 | 1 | 1 | 2 | 9 | 10 | 13 | 14 | 44 | 83 | 136 | 230 | 230 | 250 |
| Incremental Increase in Death Sentencing Rate | 10 pts. | .17 pt. | .09 | .17 | .09 | .07 | .07 | .06 | .06 | .07 | .10 | .07 | .06 | .06 | .04 |
| "P" Value | | .0001 | .0001 | .001 | .0001 | .001 | .0014 | .001 | .001 | .0002 | .001 | .01 | .01 | .021 | .04 |

### RACE OF THE DEFENDANT

| | DB61 | DB70 | DB73 | DB74 | DB77 | DB80 | DB78 | DB83 | DB83 | DB83 | DB79A | DB83 | DB80 | DB85 | DB102 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Incremental Increase in Death Sentencing Rate | −0.3 | .10 | .05 | .10 | .05 | .04 | .04 | .05 | .06 | .06 | .07 | .06 | .06 | .06 | .04 |
| "P" Value | | .0001 | .081 | .01 | .08 | .10 | .09 | .01 | .001 | .0004 | .01 | .01 | .01 | .02 | .05 |

Joseph M. Burns, Jacobs, Burns, Sugarman & Orlove, Stephen G. Seliger, Chicago, Ill., for plaintiffs.

Robert M. Wigoda, Wigoda & Wigoda, James D. Montgomery, City of Chicago Corp. Counsel, M. Ellen Sutton, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION
## AND ORDER

SHADUR, District Judge.

Gloria Padilla ("Padilla") and Anita Jones ("Jones") have separately sued Dr. Luis M. d'Avis and the City of Chicago ("City") under 42 U.S.C. § 1983 ("Section 1983") for damages arising from Dr. d'Avis' alleged sexual assaults during the course of his gynecological examinations of Padilla and Jones at a City Department of Health facility. Each plaintiff's Complaint also asserts pendent state law tort claims against both Dr. d'Avis and City.

Jones is before this Court on a motion to reconsider Judge Perry's previous dismissal of her case.[1] In Padilla's case, both Dr. d'Avis and City have moved to dismiss the Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6) for failure to state a claim for relief. For the reasons stated in this memorandum opinion and order:

   1. Jones's motion to reconsider is granted.[2] This Court reinstates her Sec-

---

1. By sheer coincidence, on Judge Perry's recent retirement Jones's case was assigned to this Court under this District Court's random assignment system—at precisely the same time de-

fendants' motions in Padilla's case were in the briefing stage.

2. In the normal course of events this Court might be disinclined to reexamine Judge Perry's

tion 1983 claim against City and dismisses her state law claims against Dr. d'Avis without prejudice.

2. As for Padilla's case:

(a) Dr. d'Avis' motion to dismiss Padilla's claims against him is granted.

(b) City's motion to dismiss is denied as to the Section 1983 claim and granted as to the state law claim.

### Facts [3]

■ On June 11, 1981 Jones went to a City Department of Health facility located in Chicago for a gynecological examination. During the course of that examination Dr. d'Avis, an employee of the facility, sexually assaulted Jones, depriving her of constitutionally protected liberty and property interests. Padilla lodges the same charge against Dr. d'Avis arising out of a March 1, 1982 gynecological examination.

City has failed (1) adequately to train, instruct, supervise and discipline physicians, (2) to require another female's presence during the exam to prevent such assaults and (3) adequately to investigate patient complaints of misconduct (Jones Amended Complaint ¶¶ 11, 12; Padilla Complaint ¶¶ 11, 13). Such failures caused Dr. d'Avis to assault Jones and Padilla.

In addition to their Section 1983 claims both plaintiffs assert (at least) the following state law torts:

1. against Dr. d'Avis: assault, infliction of emotional distress and negligence; and

2. against City: by its earlier-described "willful and wanton" failures, violation of its duty to hire competent physicians and discipline them for misconduct.

Finally, both plaintiffs lodged complaints against Dr. d'Avis with agents of City. Though City conducted an investigation, it was neither fair nor thorough (though just how that delinquency damaged plaintiffs is unidentified).

■ Each plaintiff seeks $1 million in compensatory damages and $5 million in punitive damages. Those prayers were attached to the Section 1983 claims and state law claims alike.[4]

### Section 1983 Claims

1. *City's Motion*

■ Absent some formally promulgated standard of conduct (such as an ordinance or administrative regulation), a Section 1983 cause of action against a municipality must be grounded on some direct municipal act or omission or some municipal policy, custom or practice that in either event proximately caused the employee tortfeasor to inflict the harm on the plaintiff. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Means v. City of Chicago,* 535 F.Supp. 455, 458 (N.D.Ill.1982). Here Padilla and Jones have alleged City's failures to train, instruct, supervise, investigate and discipline resulted in Dr. d'Avis' sexual assault on both plaintiffs.

City makes two arguments against the adequacy of those allegations under *Monell:*

1. No reasonable inference of causation can be drawn from City's alleged failures.

2. Under *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982) Dr. d'Avis' actions were not state action, so that plaintiffs

---

*Jones* determinations de novo (though such usual comity between District Judges is not strictly speaking "law of the case," it draws on similar policy considerations). But here this Court *must* make its independent determination in *Padilla,* and *Jones* is also permanently on its calendar. Under the circumstances it would be anomalous for the two virtually identical cases to be governed by inconsistent rulings.

**3.** As always on a motion to dismiss, all factual allegations in each complaint are taken as true

and all reasonable factual inferences are drawn in favor of the plaintiffs. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977).

**4.** City has no punitive damages liability under Section 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Because only the Section 1983 claims against City survive this opinion, each plaintiff's prayer for punitive damages is stricken entirely.

were not deprived of a constitutionally protected right.

Both those arguments fail.

■ There is a difference of opinion within this District Court as to the pleading specificity required under *Monell,* (contrast, e.g., *Mui v. Dietz,* 559 F.Supp. 485, 487–88 (N.D.Ill.1983) with, e.g., *Means*). Since well before *Means* (see, e.g., *Thompson v. Evergreen Park,* 503 F.Supp. 251 (N.D.Ill.1980)) this Court has held the notice pleading concepts exemplified in Rule 8 establish a low threshold for a complaint's allegations as to the municipality's act, omission, policy, custom or practice (and the same principle necessarily applies as to the causal nexus between the municipality's conduct and plaintiff's injury). As *Means,* 535 F.Supp. at 459 and *Thompson,* 503 F.Supp. at 252 point out, whether the municipality's asserted misconduct exists and whether it in fact caused the individual's behavior (which in turn injured plaintiffs) are matters of proof, not pleading. If plaintiffs can adduce proof of City's earlier-described failures, one or more of those lapses could be a proximate cause of Dr. d'Avis' misconduct.[5] See *Lenard v. Argento,* 699 F.2d 874, 885–86 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *Villa v. Franzen,* 511 F.Supp. 231, 235 (N.D.Ill.1981). Both those questions of fact cannot be resolved at this initial pleading stage.

■ City's second argument wholly misperceives *Monell* and kindred cases. City's liability is not dependent on whether the employee-tortfeasor can be characterized as engaging in "state action." Rather, for purposes of City's *direct* liability, its own alleged action or inaction—whether via ordinance or regulation, via failure to take adequate and necessary steps or (as in *Monell*) via policy or custom—is itself the requisite "state action." City's reliance on *Bowers* is misplaced. There a released mental patient had killed Bowers' decedent, and the Court of Appeals rejected an attempt to subject the State to Section 1983 liability. Under those circumstances *Bowers,* 686 F.2d at 618 said the State has no constitutional duty to protect a member of the public from a person over whom the State has no control. Dr. d'Avis cannot be likened to the released mental patient in *Bowers.* At least on the pleadings he is a City employee, as to whom City's control relationship—and hence City's duty owed to those with whom he deals in the course of *his* duties—is much different.

This is not of course to say that the right to control a municipal employee of itself carries with it Section 1983 liability. That would flout *Monell.* It is rather that such right to control, when it is implemented by the kinds of failures of supervision (and other failures) alleged in the complaint, can provide the necessary causal nexus and duty for municipal liability. By way of sharp contrast, the state defendants obviously had no comparable control over the freed mental patient in *Bowers.*

Thus plaintiffs have adequately alleged a Section 1983 cause of action against City. City must remain in each case to that extent.

*2. Dr. d'Avis' Motion*

To state a Section 1983 cause of action against Dr. d'Avis, plaintiffs must allege

---

5. This is not to say of course that all the asserted failures stand on the same footing. For example it is difficult to imagine persuasive proof that training and instruction would be effective to inhibit such inherently outrageous and reprehensible conduct as that charged to Dr. d'Avis in these cases. On the other hand, City's failure to supervise, or to insure presence of another woman during the examination, might well meet the proximate cause test (remembering the familiar concept that "proximate cause" need not mean "sole cause"; it is not now necessary to ring all the changes, such as the possibility Dr. d'Avis' conduct might be found an independent intervening cause so as to break the causal chain for liability purposes). As for City's failure to discipline or to investigate, if those *preceded* the assaults they could perhaps be found causative (though more attenuated than the failures discussed in the preceding sentences). Just how any such *later* failures could bear on the issue is a matter for which plaintiffs must ultimately stand accountable. But all these things are for the future. For now it is enough to say (1) at least some of the charges could fill the bill and (2) this opinion does not speak definitively as to the ultimate adequacy of any of them.

(1) deprivation of a right secured by the United States Constitution or laws (2) by Dr. d'Avis' action "under color" of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978). Dr. d'Avis argues he is not amenable to suit under Section 1983 because he was not acting under color of state law.

◼ Plaintiffs assert deprivation of a liberty or property interest protected by the Due Process Clause. Clearly an intentional tort such as assault implicates a protectible liberty interest. See *Mary Beth G. and Sharon N. v. City of Chicago*, 723 F.2d 1263 at 1270–1271 (7th Cir.1983). But under the Fourteenth Amendment such an interest is protected against deprivation only by state government, *Flagg Brothers*, 436 U.S. at 156, 98 S.Ct. at 1733. What must be decided then is whether Dr. d'Avis can be characterized as a governmental actor so as to render him personally liable in *constitutional*—Fourteenth Amendment—terms. To phrase the inquiry in its most familiar way, was Dr. d'Avis engaged in "state action"? [6]

◼ As the Supreme Court has recently made clear, "state action" and "under color" of state law are not necessarily the same concept when an individual is acting. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 n. 18, 102 S.Ct. 2744, 2753 n. 18, 73 L.Ed.2d 482 (1982); *Flagg Brothers*, 436 U.S. at 156–57, 98 S.Ct. at 1733–34. *Lugar* teaches all state action is action under color of state law, but all action under color of state law is not necessarily state action. Here plaintiffs have alleged Dr. d'Avis' actions were "caused" (obviously not in the volitional sense, but in the proximate-cause sense) by City's already-discussed delinquencies. Assuming that allegation satisfies Section 1983's under-color-of-state-law requirement, the allegation is not necessarily enough to show Dr. d'Avis' assault was state action.

In *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1982) the Court held state employment alone was not enough to show a public defender exercising independent professional judgment was acting under color of state law, absent an allegation he acted pursuant to a state rule that required the conduct. See *Blum v. Yaretsky*, 457 U.S. 991, 1009, 102 S.Ct. 2777, 2788, 73 L.Ed.2d 534 (1982). If in *Polk County* the public defender was not acting under color of law, by definition he was not engaged in state action. See *Blum*, 457 U.S. at 1009, 102 S.Ct. at 2788.

◼ Here Dr. d'Avis is a professional like the public defender in *Polk County*. It must be assumed for current purposes his conduct (the pattern of sexual assaults) was facilitated by City's delinquencies. But the "state action" question is a different one: whether the misconduct can fairly be attributed to the State. *Rendell-Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982).

Although the distinction is not always easy to articulate, it is instructive to view it in terms of contrasting illustrations. In the classic case of the sheriff beating the prisoner for racial reasons (*Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1944)), no one contends he is doing the State's bidding. But what he *is* doing is carrying out in a constitutionally impermissible way the very function the State has assigned to him. We have both action "under color" of state law and "state action"—the State acting through its agent. By contrast, the private party enforcing a warehouseman's lien (*Flagg Brothers*) is also enabled to do so only by virtue of a state statute. Hence the action may be deemed "under color" of state law. But the activity itself, whether carried out rightly or wrongly, serves the ends not of the government but of the private actor. It is not "state action."

---

6. In this area of inquiry—whether personal liability exists under the Due Process Clause's "No State shall..." language—the application of

Amendment XIV is like a latter-day echo of Louis XIV: "L'etat c'est moi."

How does Dr. d'Avis fare in those terms? To be sure he was hired and placed in the City Department of Health facility by City, and City (on the complaints' allegations) failed to do the things required to avoid known or obvious risks of the misconduct he perpetrated. In that sense, he was enabled to do the complained-of acts "under color" of law. But the services he rendered, properly or improperly, were extended to and for the *patients* and not *City*. Padilla argues because Department of Health doctors compile disease statistics and report epidemics to their superiors, they serve a state function, just as the doctors held liable in *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) and *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) were found to be fulfilling an institutional (hence a state action) function. However, as *Polk County*, 454 U.S. at 320, 102 S.Ct. at 450 noted, those doctors were sued in their capacity as custodians and supervisors—for carrying out (more accurately, for delinquency in carrying out) their institutional, not their private-patient professional, functions. No hint of any such supervisory or other institutional function is involved here as to Dr. d'Avis. Moreover the Court's focus in *Rendell-Baker* and *Blum* is much narrower: not whether in some sense Dr. d'Avis may generally contribute to Department of Health goals in his duties as a physician, but rather whether his actions as to Padilla and Jones (the gynecological examinations, whether done properly or involving the improper sexual assaults) fulfilled a state function.

All this may be somewhat redolent of Justice Stewart's famed means of identifying obscenity.[7] In a sense the distinction is somewhat like that, encountered in other legal contexts, between the governmental and proprietary activities in which government may engage. But however the matter is viewed, the end result is a conclusion Dr. d'Avis was not engaged in "state action" when he examined, and in the course

of those examinations assaulted, Padilla and Jones.

This determination is not inconsistent with the earlier holding plaintiffs have stated a Section 1983 cause of action against City. As stated earlier, the "state action" as to City is its very own conduct (in the form of the alleged failures that were the alleged proximate cause for Dr. d'Avis' conduct in the tort sense). For Dr. d'Avis to bear Section 1983 liability, *his* conduct must have been state action in the constitutional sense. Those two inquiries are distinct, and plaintiffs have not provided an affirmative answer to the second one.

### Pendent State Claims

There remain for consideration plaintiffs' pendent state law claims against City and Dr. d'Avis. Even though this opinion's Section 1983 rulings make the latter inquiry the easier and shorter one, in the interests of symmetry City will be dealt with first.

1. *City's Motion*

City makes two arguments that it says bar the state law claims against it:

1. Padilla failed to allege or provide the written notice to City required by the Illinois Tort Immunity Act, Ill.Rev.Stat. ch. 85, §§ 8–102 and 8–103 ("Sections 8–102 and 8–103").

2. Both plaintiffs failed adequately to allege Dr. d'Avis was acting in furtherance of the employer City's business.

Padilla responds:

1. City had actual notice of the incident because it conducted an investigation into the incident. In addition her Complaint gives the same information the notice requires.

2. Complaint ¶ 7 is sufficient, for it alleges Dr. d'Avis was working in his "official capacity" as a Department of Health physician.

City has the better of it on both grounds.

As for the required notice, Sections 8–102 and 8–103 provide:

---

**7.** *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).

§ 8–102. Within 1 year from the date that the injury or cause of action, referred to in Sections 8–101, 8–102 and 8–103, was received or accrued, any person who is about to commence any civil action for damages on account of such injury against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, must serve, either by personal service or by registered or certified mail, return receipt requested, a written notice on the Secretary or Clerk, as the case may be, for the entity against whom or against whose employee the action is contemplated [consisting of (?)] a written statement, signed by himself, his agent or attorney, giving in substance the following information: the name of the person to whom the cause of action has accrued, the name and residence of the person injured, the date and about the hour of the accident, the place or location where the accident occurred, the general nature of the accident, the name and address of the attending physician, if any, and the name and address of the treating hospital or hospitals, if any. § 8–103. If the notice under Section 8–102 is not served as provided therein, any such civil action commenced against a local public entity, or against any of its employees whose act or omission committed while acting in the scope of his employment as such employee caused the injury, shall be dismissed and the person to whom such cause of injury accrued shall be forever barred from further suing.

Illinois Supreme Court decisions have added a gloss to the statute, permitting either the written notice (as is literally required) *or* the lawsuit asserting the claim to be filed within the one-year time period. *Dunbar v. Reiser,* 64 Ill.2d 230, 237, 1 Ill.Dec. 89, 91–92, 356 N.E.2d 89, 91–92 (1976). See also *Zavala v. City of Chicago,*

66 Ill.2d 573, 578–79, 6 Ill.Dec. 901, 902–03, 363 N.E.2d 848, 849–50 (1977). In both those cases the Court reasoned what is required is not simply notice of the *injury* but notice of the prospective plaintiff's intention to commence a suit for damages. *Dunbar,* 64 Ill.2d at 235, 1 Ill.Dec. 91, 356 N.E.2d at 91.

Padilla's claim of City's actual knowledge of the injury does not meet the statutory requisite, nor was her Complaint filed within one year of the injury so as to satisfy *Dunbar*'s rationale or holding.[8] Padilla's state law claims against City are therefore subject to dismissal as time-barred.[9]

As for the issue of pleading sufficiency (common to both plaintiffs' complaints), it poses a substantive question of agency law: how Dr. d'Avis' actions are in furtherance of City's business purpose so as to be chargeable to City. That looks to Illinois law rather than to federal pleading concepts (which would govern matters of procedure).

*Hoover v. University of Chicago Hospitals,* 51 Ill.App.3d 263, 266–67, 9 Ill.Dec. 414, 417–18, 366 N.E.2d 925, 928–29 (1st Dist.1977) upheld dismissal of a complaint for failure to state a cause of action. There, as in these cases, plaintiff alleged the doctor was acting in the course of his employment when he sexually assaulted her during an examination at University Hospitals. Nonetheless the Appellate Court said the intentional sexual assault cannot be interpreted as an act in furtherance of the hospital's business. *Hoover,* 51 Ill.App.3d at 267, 9 Ill.Dec. at 418, 366 N.E.2d at 929.

■ *Hoover* is on all fours. Even with all factual inferences in plaintiffs' favor, neither Complaint contains any allegations that could show the sexual assault was "actuated at least in part by a purpose to further the employer's business." *Sunseri v. Puccia,* 97 Ill.App.3d 488, 493, 52 Ill.Dec.

---

**8.** Padilla was allegedly assaulted March 1, 1982, but she did not bring suit until September 13, 1983.

**9.** City did not raise the same issue as to Jones's assertion of her state law claims.

716, 721, 422 N.E.2d 925, 930 (1st Dist. 1981). That incurable disease is fatal to both plaintiffs' state law claims against City.

### 2. *Dr. d'Avis' Motion*

Dr. d'Avis is out of this case on Section 1983 grounds. Any state law claims against him would thus call for assertion of pendent party jurisdiction. If not dead altogether, that concept appears at best moribund in this Circuit. *Graf v. Elgin, Joliet and Eastern Railway Co.*, 697 F.2d 771, 775 (7th Cir.1983); *Hixon v. Sherwin-Williams Co.*, 671 F.2d 1005, 1008–09 (7th Cir. 1982); *Martin v. County of Kendall*, 561 F.Supp. 726, 730 (N.D.Ill.1983); see also last week's Supreme Court reference to the continued vitality of *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976), in *Pennhurst State School & Hospital v. Halderman*, — U.S. —, — n. 33, 104 S.Ct. 900, 920 n. 33, 79 L.Ed.2d 67 (1984).

But even if pendent party jurisdiction were sometimes maintainable, in the present posture of this case (now that this Court has dismissed the state law claims against City) retention of such claims against Dr. d'Avis would not serve considerations of judicial economy. *Hixon*, 671 F.2d at 1007. Accordingly plaintiffs' state law claims against Dr. d'Avis are dismissed, without prejudice to their reassertion in state court.

### *Conclusion*

Jones' motion for reconsideration is granted. Her Section 1983 claim against City is reinstated. Her state law claims (1) against City are dismissed with prejudice and (2) against Dr. d'Avis are dismissed without prejudice.

City's motion to dismiss Padilla's Section 1983 claim is denied. Padilla's state law claims against City are dismissed with prej-

udice. Dr. d'Avis' motion to dismiss Padilla's claims is granted (1) with prejudice as to the Section 1983 claim and (2) without prejudice as to her state law claims.

City is ordered to answer each plaintiff's Section 1983 claims. These actions are set for a further status report March 9, 1984 at 9 a.m.