Billy WARDELL and Donald Reynolds, Plaintiffs,

v.

CITY OF CHICAGO, Pamela Fish, individually, and in her official capacity, and Unknown City of Chicago Employees, Defendants.

No. 98 C 8002.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 22, 1999.

Douglas Henry Johnson, Kathleen T. Zellner and Associates, Napervile, IL, Kathleen T. Zellner, Attorney at Law, Naperville, IL, for Billy Wardell, plaintiff.

David William Gleicher, Attorney at Law, Skokie, IL, for Donald Reynolds, plaintiff.

David Mitchell Zinder, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Thomas Joseph Platt, City of Chicago, Department of Law, Chicago, IL, for Edward Winstead, individually and in his official capacity, defendant.

Allen Stewart Kirsh, Schoenberg, Fisher, Newman & Rosenberg, Ltd., Chicago, IL, Carol J. Chavez, Cook County State's Attorney, Chicago, IL, for Earl Grinbarg, individually and in his official capacity, defendant.

Brian L. Crowe, Shefsky, Froelich & Devine, Ltd., Chicago, IL, Jeffrey Neil Given, City of Chicago, Law Department Corporation Counsel, Chicago, IL, Aimee B. Anderson, Michael W. Early, City of Chicago, Department of Law, Chicago, IL, for Chicago Police Crime Laboratory, City of Chicago, The, defendants.

Alec McAusland, City of Chicago, Law Department Corporation Counsel, Chicago, IL, for Pamela Fish, individually, and in her official capacity, defendant.

### *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Billy Wardell ("Wardell") and Donald Reynolds ("Reynolds") sued the City of Chicago, Pamela Fish, and unknown City of Chicago employees for violating their civil rights under 42 U.S.C. § 1983 and for intentional infliction of emotional distress. The defendants filed a joint motion to dismiss, which we deny for the reasons stated below.

### RELEVANT FACTS

On May 3, 1986, two women, J.C. and C.H., were sexually assaulted in the vicinity of the University of Chicago campus in Chicago, Illinois. Chicago police officers investigating the assaults prepared Vitullo kits from samples taken from the two victims, which were given to the Chicago Police Department Crime Laboratory (CPD Lab) for testing. The victims stated that they had been assaulted by three black males, all approximately 20–25 years old. On May 6, J.C. and C.H. identified Reynolds as one of their attackers. Reynolds was immediately arrested. On June 6, the victims viewed a photograph line-up of six men, including Wardell. C.H. picked a photograph of Wardell and stated, "this could be one of the guys." J.C. did not identify anyone from the photo line-up. On June 10, Wardell was taken into custody. Later that day, the victims viewed him in a line-up. Wardell was the only subject who was required to wear a hooded sweatshirt (one of the victims stated that her attacker had worn a hooded sweatshirt). In addition, Wardell was the only subject required to say "are you trying to play dead?," a question asked by one of the attackers. C.H. identified Wardell, but J.C. did not. Wardell was then arrested and charged with offenses related to the attacks.

C.H. stated that she had dug her nails into the penis of her attacker. Plant material with blood on it was recovered where C.H. was attacked and given to the CPD Lab for testing. Although blood evidence is usually tested in the trace section before being tested in the serology section of the CPD lab to avoid contamination, the plaintiffs allege that Pamela Fish, a CPD Lab employee reversed the order of testing, thereby exposing the evidence to contamination.[1] No CPD Lab reports were pro-

---

1. The plaintiffs also allege that Pamela Fish
removed the Vitullo kits and the victims'

duced regarding: (1) the blood type or comparing the blood to the blood of the suspects; (2) the victims' fingernail scrapings which were included in the Vitullo kits; or (3) a comparison of the fingernail evidence to blood or trace evidence from the suspects. However, Maria Pulling, a CPD Lab forensic expert, analyzed trace evidence and prepared a CPD Lab report, dated June 17, 1986, summarizing her findings. The plaintiffs allege that this report contained significant evidence exculpating them.

The plaintiffs' defense counsel in the Wardell/ Reynolds trial requested the results of any scientific tests and any exculpatory evidence from the prosecution. However, they neither received the Pulling report nor were they given Pulling's name as a potential witness. Reynolds requested DNA testing in his criminal trial, but the plaintiffs allege that, due in part to the paucity of evidence in that case, the request for DNA testing was denied. The plaintiffs assert that proper production of the Pulling report would have given the trial judge sufficient evidence to grant the request for DNA testing, which would have exculpated them. The plaintiffs allege that the defendants concealed the exculpatory evidence pursuant to a policy or custom, created, carried-out, or condoned since 1980 of concealing exculpatory evidence, in at least 300 cases involving African–American suspects.

Wardell and Reynolds were both prosecuted and found guilty of aggravated criminal sexual assault, armed robbery, attempted criminal sexual assault and attempted armed robbery. They were sentenced to 69 years in prison, but later resentenced to 55 years following an appeal. After their trial and convictions, Wardell and Reynolds filed post-conviction petitions, requesting DNA testing. The DNA

testing that was conducted proved that Wardell and Reynolds were not guilty of the offenses charged. Their convictions were vacated on November 17, 1997, and after spending eleven and a half years in prison, subsequently were granted clemency and pardoned by the State of Illinois. They now bring this suit to recover damages for deprivation of their right to due process in violation of the Fifth and Fourteenth Amendments of the Constitution. In addition, they seek damages for the deprivation of their right to be free from unreasonable seizure and imprisonment in violation of the Fourth and Fourteenth Amendments of the Constitution. Finally, they present supplemental state law claims for intentional infliction of emotional distress.

## ANALYSIS

### I. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure does not test whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim for which relief may be granted. *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115, 1118 (7th Cir.1995). In ruling on a motion to dismiss, the court must presume all of the well-pleaded allegations of the complaint to be true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Dismissal under Rule 12(b)(6) is proper only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Panaras v. Liquid Carbonic Indus. Corp.,* 74 F.3d 786, 791 (7th Cir.1996).

---

clothing from the CPD Lab with the knowledge and consent of the other defendant-employees. Furthermore, the plaintiffs assert that Fish deliberately misled the jury in the Wardell/ Reynolds trial when she testified in an inaccurate and deceptive manner that the possibility that semen recovered from one of

the victims came from someone with the same blood characteristics as Reynolds, (about 38% of the black male population), when in fact, the results actually showed that the semen could have come from over 80% of the black male population.

## II.  Violation of Right to Due Process

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) the perpetrator of the alleged conduct was acting under color of state law; and (2) the alleged conduct deprived the plaintiff of a right, privilege, or immunity guaranteed by the Constitution or the laws of the United States. *Papapetropoulous v. Milwaukee Transport Servs., Inc.*, 795 F.2d 591, 595 (7th Cir.1986). In addition, "a causal connection must exist between the defendant's actions and the injury resulting from the constitutional violation." *Id.* Although § 1983 claims are not subject to a heightened pleading standard, a plaintiff nonetheless must allege facts that, if believed, would show that a federal right was actually violated.  The factual allegations must identify what the defendant did to cause a constitutional violation.  *Id.*; *McTigue v. City of Chicago*, 60 F.3d 381 (7th Cir.1995) (Fed.R.Civ.P. 8 does not require detailed factual pleading, but the plaintiff's assertions must still direct the defendant to the factual cause of the plaintiff's alleged injury).  The plaintiffs allege that Fish, unknown employees, and the City, acting under color of state law, violated their constitutional right to due process.

### A.  Fish and Unknown Employees

■ The plaintiffs allege that the defendants Fish and unknown employees acted under color of state law, satisfying the first requirement of a § 1983 claim.  (R. 32, Pls.' Second Consolidated Compl. ¶¶ 4–5.)  Furthermore, the plaintiffs' factual allegations regarding the deprivation of their right to due process satisfy the pleading requirement under the Federal Rules of Civil Procedure.  Specifically, the plaintiffs allege that Fish and unknown employees: (1) concealed exculpatory evidence; (2) facilitated and condoned the custom of concealing exculpatory evidence; (3) failed to test available blood evidence related to the crime; and (4) failed to

avoid contamination of the trace evidence. It is well established that "[a]ny nondisclosure of material exculpatory evidence by the government results in a violation of the defendant's due process rights." *United States v. Bhutani*, 175 F.3d 572, 577 (7th Cir.1999); *see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Favorable evidence is material if "its suppression undermines confidence in the outcome of the trial"; this does not require a showing that it is more likely than not that the verdict would have been different if the evidence in question had been disclosed, but only that there is a "reasonable probability" that the outcome would have been different.  *United States v. Gonzalez*, 93 F.3d 311, 316 (7th Cir. 1996).

■ The plaintiffs allege that the defendants' actions, particularly concealing exculpatory evidence, deprived them of their right to due process.  In support of their argument, the plaintiffs submit an affidavit from Pulling, stating her opinion that the report "should have gone to those who requested it, and to the defense because it was exculpatory." [2]  (R. 32, Pls.' Second Consolidated Compl., Ex. B., Pulling Aff. at ¶ 19.)  These factual allegations and the supporting affidavit adequately allege a cause of action for due process violation by concealing exculpatory evidence.  Therefore, we deny the defendants' motion to dismiss the plaintiffs' due process claims against Fish or unnamed employees.

### B.  City of Chicago

■ A municipality can be liable under § 1983, but only if a "City policy itself cause[s] the constitutional deprivation.  Therefore the municipality itself is the state actor and its action in maintaining the alleged policy at issue supplies the 'color of law' requirement under § 1983." *Gibson v. City of Chicago*, 910 F.2d 1510,

---

**2.**  The defendants argue that the Pulling report was not exculpatory and therefore the plaintiffs' claim must be dismissed.  However, we will not decide on a motion to dismiss the

significance of the report.  At this stage of the litigation, we must presume that the plaintiffs' allegation that the report is exculpatory is true.

1519 (7th Cir.1990); *see also Monell v. Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The plaintiff must establish the municipality's imprimatur on the unconstitutional conduct and may meet that burden by pointing to "official pronouncements of the municipal or legislative bodies, agency action in accordance with delegated authority, actions by individuals with final decision-making authority, inaction or custom." *Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). In this case, the plaintiffs properly allege that the City acted under color of state law by not establishing policies or procedures to disclose exculpatory evidence; failing to adequately train and supervise employees regarding exculpatory evidence; and facilitating or condoning the practice of concealing exculpatory evidence.

Similarly, the plaintiffs adequately allege that the City deprived them of their constitutional right to due process. Case law recognizes three ways in which a municipality's policy can violate an individual's civil rights: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with 'final policy-making authority.'" *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734–35. (7th Cir.1994) (citations omitted). The notice pleading requirement of Federal Rule of Civil Procedure 8 "establish[es] a low threshold for a complaint's allegations as to the municipality's act, omission, policy, custom or practice (and the same principle necessarily applies as to the causal nexus between the municipality's conduct and plaintiff's injury).... [W]hether the municipality's asserted misconduct exists and whether it in fact caused the individu-

---

**3.** Those four cases involved the defendants John Willis, Glen Baker, George Jones, and

---

al's behavior (which in turn injured plaintiffs) are matters of proof, not pleading." *Padilla v. d'Avis*, 580 F.Supp. 403, 406 (N.D.Ill.1984).

In this case, the plaintiffs adequately allege that the City had a widespread practice of concealing exculpatory evidence. The plaintiffs support their allegation by citing several other cases in which the City played a role in concealing exculpatory evidence, where innocent but incarcerated individuals ultimately were freed after the evidence came to light.[3] The plaintiffs further argue that these cases represent only a small fraction of the more than 300 criminal defendants victimized by the City's widespread practice of concealing exculpatory evidence.

The plaintiffs also allege that the City had an inadequate policy or custom with regard to exculpatory evidence and also failed to train and supervise its employees in the appropriate handling of exculpatory evidence, which led to a violation of the plaintiffs' constitutional rights. Municipalities can be held liable for "inadequate policies" or "failure to train" only where "the failure ... amounts to deliberate indifference." *Gibson*, 910 F.2d at 1522. The plaintiffs allege that the City's failure to act exhibited "deliberate and reckless indifference to Plaintiffs' Constitutional and federally protected rights." (R. 32, Pls.' Second Consolidated Compl. ¶ 81.) The plaintiffs claim that the City's inadequate policies as well as inadequate training and supervision of employees led the plaintiffs in this case to be wrongfully convicted and to spend eleven and a half years in prison. All these allegations, especially when viewed as a whole, adequately set forth a *Monell* claim. For these reasons, we will not dismiss the plaintiffs' violation of due process claims against the City.

Madison Hobley.

## III. Unreasonable Search and Imprisonment

### A. Statute of Limitations

The defendants first argue that the plaintiffs' unreasonable seizure and imprisonment claim is barred by Illinois' two year statute of limitations. *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996). The defendants maintain that the statute of limitations period began on the day of the arrest, in 1986, well over two years before the plaintiffs filed suit in the instant case. However, when conviction and imprisonment are themselves constitutional wrongs, accrual of the claim is postponed until the judgment has been set aside. *Gonzalez v. Entress*, 133 F.3d 551 (7th Cir.1998). Thus, for a claim of unconstitutional conviction or imprisonment to be cognizable under § 1983, a plaintiff must prove that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Wardell and Reynold's convictions were vacated on November, 17, 1997. The case was removed to this Court in December 1998 from the Circuit Court of Cook County. Thus, the case was originally filed well within the two year time limit.

### B. Unreasonable Seizure and Imprisonment

As explained above, § 1983 plaintiffs must allege that the defendants were acting under color of state law and that the alleged conduct deprived the plaintiffs of a constitutional right. The plaintiffs allege that the defendants' actions, depriving them of their right to due process, resulted in their wrongful imprisonment. Therefore, because we found above that the defendants were acting under color of state law for the due process claims, clearly defendants also were acting under color of law when they imprisoned the plaintiffs. In addition, because the alleged conduct, *i.e.* unreasonable seizure and imprisonment, constitutes a constitutional violation, we deny defendants' motion to dismiss plaintiffs' Fourth and Fourteenth Amendment claims.

## IV. Intentional Infliction of Emotional Distress (IIED)

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that "(1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended that his conduct should inflict severe emotional distress, or knew that there was a high probability that his conduct would cause severe emotional distress; [and] (3) the defendant's conduct in fact caused severe emotional distress." *Murray v. Kutzke*, 967 F.Supp. 337, 346 (N.D.Ill.1997) (citing *Doe v. Calumet City*, 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 506 (1994)). Conduct is extreme and outrageous only if it is "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir.1997) (citations omitted). In this case, the plaintiffs allege that the defendants' conduct was extreme and outrageous. The defendants concealed, mishandled, contaminated, and removed evidence, and Fish specifically testified in a deceptive manner in order to mislead the jury. Furthermore, the plaintiffs claim that the defendants intended their conduct to cause severe emotional distress and knew that there was a high probability that their conduct, indeed, would cause severe emotional distress. Finally, they allege that the defendants' conduct caused them to be incarcerated for eleven and a half years for crimes they did not commit, causing them severe emotional distress.

The defendants argue that, to recover on an intentional infliction of emotional distress theory, there must be a relationship between the plaintiff and the defendant. However, they do not provide any support for this proposition, nor has our

independent research revealed any. In prior pleadings, the defendants did cite cases in which there happened to be a relationship between the parties, but none of these cases state that such a relationship was a requirement of the cause of action. Therefore, because we cannot say that the plaintiffs could prove no set of facts which would support their claims, the defendants' motion to dismiss the intentional infliction of emotional distress claims is denied.

## CONCLUSION

For these reasons, we deny the defendants' motion to dismiss. (R. 33–1.) The parties are directed to proceed with discovery in this case so that all discovery can be concluded on or before December 31, 2000.